**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 11 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ALVIN D. ESNAULT, JR.,

    Plaintiff-Appellant,

v.

BRIAN BURNETT, Exec. Director Colo.
Dept. of Corrections; ROBERT
FURLONG, Warden, Sterling
Correctional Facility; CAPTAIN
JEMMERSON, Sterling Correctional
Facility; JERRY GASKO, Assistant
Director, Colo. Dept. of Corrections; J.
OLSEN, Case Manager, Sterling
Correctional Facility; E. KING, Case
Manager, Sterling Correctional Facility,

    Defendants-Appellees.

No. 03-1153

(D.C. No. 02-B-54)

(D. Colorado)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **BRISCOE**, and **LUCERO**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of this

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Plaintiff Alvin D. Esnault, Jr., appearing pro se, appeals the district court's entry of summary judgment in favor of defendants in his 42 U.S.C. § 1983 civil rights action. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

I.

Esnault was convicted of first degree arson and second degree assault and is incarcerated at the Sterling Correctional Facility. Colo. Rev. Stat. § 16-11-102.3 requires that such offenders submit to collection of a biological substance sample at least 30 days prior to discharge or release from custody. If an inmate refuses, the Colorado Department of Corrections is authorized to obtain the sample by reasonable force. Id. Esnault refused to sign a "Notification of Lawful Order for DNA Testing." Correctional officers ordered him to report to the medical department for testing, where Esnault again refused to sign the notification but stated he would not resist. Esnault's blood sample was drawn without use of force.

Esnault filed his § 1983 action alleging defendants violated his First, Eighth, and Fourteenth Amendment rights, the ex post facto clauses of the United States and Colorado Constitutions, and the takings clause of the Colorado Constitution. He sought compensatory and punitive damages and declaratory and injunctive relief. The district court adopted the recommendation of the magistrate judge and granted summary

2

judgment in favor of defendants.

## II.

We review the grant of summary judgment de novo. See Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000). To state a successful claim under § 1983, a complaint must allege facts that, if assumed to be true, would demonstrate the defendants deprived the plaintiff of a right secured by federal law while acting under color of state law. Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970).

Esnault contends defendants Brian Burnett, Jerry Gasko, and Robert Furlong were responsible for the acts of their employees and should not have been dismissed as parties. Under § 1983, when a defendant is sued in his individual capacity, the complaint must allege facts that show the defendant *personally participated* in the alleged violation. Bennett v. Passic, 545 F.2d 1260, 1262-63 (10th Cir. 1976). Consistent with this rule, this court has held that a supervisor cannot be held liable for his employees' actions based solely on his supervisory position. Jenkins v. Wood, 81 F.3d 988, 994 (10th Cir. 1996). Rather, there must be some affirmative link between the alleged deprivation and the supervisor's control or failure to supervise. Meade v. Grubbs, 841 F.2d 1512, 1527 (10th Cir. 1988). Here, Esnault failed to allege any facts that showed personal participation on the part of defendants Burnett, Gasko, or Furlong.

Esnault also contends his First Amendment claim of the right to petition the court for redress of his grievances should not have been dismissed. To prevail on this claim,

3

Esnault must demonstrate an actual injury to his ability to pursue a non-frivolous legal claim. Lewis v. Casey, 518 U.S. 343, 351-52 (1996); Cosco v. Uphoff, 195 F.3d 1221, 1224 (10th Cir. 1999). There was no evidence presented to support a claim for denial of access, i.e., there is no evidence that defendants hindered Esnault's efforts to pursue a legal claim.

Esnault contends that drawing his blood without his consent constituted an unlawful taking of a property interest without just compensation, in violation of the Colorado Constitution. It is well established that a claim cannot be brought under § 1983 for an alleged violation of state law. Malek v. Haun, 26 F.3d 1013, 1016 (10th Cir. 1994). Further, this court has stated that the takings clause does not provide prisoners with protection against unwanted DNA testing. See Boling v. Romer, 101 F.3d 1336, 1341 (10th Cir. 1996).

Next, Esnault contends the district court erred in dismissing his Eighth Amendment claim that the unauthorized taking of DNA constituted cruel and unusual punishment. There are two primary requirements for proving an actionable violation of the Eighth Amendment. First, an inmate must demonstrate that the deprivation suffered was "objectively," "sufficiently serious." Wilson v. Seiter, 501 U.S. 294, 298 (1991). Second, the inmate must establish that prison officials had a sufficiently culpable state of mind in allowing the deprivation to take place. Id. at 302-03. In prison-conditions cases, that state of mind is one of "deliberate indifference" to inmate health or safety. Id.

4

Esnault failed to present any evidence establishing that defendants disregarded an excessive risk to his health or safety and the facts do not support the subjective "deliberate indifference" requirement. See Boling, 101 F.3d at 1341 (dismissing Eighth Amendment claim against state officer where state officer drew blood to establish DNA data bank).

Esnault contends the district court erred in dismissing his Eighth Amendment excessive force claim. To prevail on this claim, Esnault must show that the force used exceeded contemporary standards of decency. Hudson v. McMillian, 503 U.S. 1, 6-7 (1992); Mitchell v. Maynard, 80 F.3d 1433, 1440 (10th Cir. 1996). Here, it is undisputed that force was not used.

Esnault also contends the district court erred in dismissing his Fourteenth Amendment due process claims. We first conclude that Esnault's procedural due process rights were not violated because the due process clause does not require a hearing before the involuntary extraction of blood for DNA sampling. See Boling, 101 F.3d at 1340-41. As regards Esnault's substantive due process rights, we agree with the district court that the claim should be dismissed, but we would resolve the issue on different grounds. As we recently explained in the context of a claim to be free from unauthorized medical examinations, "where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the

5

guide for analyzing these claims." Dubbs v. Head Start, Inc., 336 F.3d 1194, 1203 (10th Cir. 2003). In United States v. Kimler, 335 F.3d 1132, 1146 (10th Cir. 2003), we held that the right to be free from unwanted DNA testing implicates a Fourth Amendment right. We therefore analyze Esnault's substantive due process claim by first determining whether the Fourth Amendment affords him the right to be free from compelled collection of a blood sample for DNA testing. In Kimler, we held that laws compelling the collection of DNA from prisoners fall under the special needs exception to the Fourth Amendment's warrant requirement. Kimler requires dismissal of this claim for failure to state a substantive due process claim.

Finally, Esnault contends the taking of blood violated the ex post facto clause because the law did not become effective until after he was convicted and impermissibly increased the punishment for his crimes beyond that imposed by the sentencing court. This issue is foreclosed by our ruling in Shaffer v. Saffle, 148 F.3d 1180, 1182 (10th Cir. 1998), where we held statutes that require offenders to provide DNA samples have a "legitimate, non-penal legislative purpose" and therefore "do not run afoul of the Ex Post Facto Clause." See Jamison v. People, 988 P.2d 177. 180 (Colo. App. 1999) (holding state statutes requiring convicted sex offenders released from custody to submit to chemical blood testing did not violate ex post facto clauses of federal and state constitutions because intent of statute is remedial, not punitive); see also Gilbert v. Peters, 55 F.3d 237, 238-39 (7th Cir. 1995) (general DNA law requiring blood samples from

6

prisoners are not penal in nature and do not violate ex post facto clause); <u>Jones v. Murray</u>, 962 F.2d 302, 309 (4th Cir. 1992) (same).

AFFIRMED.  All pending motions are DENIED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge